**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **GLYCOBIOSCIENCES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-1901 (RDM)** |
| | ) | |
| **INNOCUTIS HOLDINGS, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On November 25, 2012, Plaintiff Glycobiosciences, Inc. brought this patent infringement

suit against Defendants Innocutis Holdings, LLC, and DARA BioSciences, Inc. ("Defendants").

*See* Dkt. 1.  Plaintiff's amended complaint (Dkt. 23) alleges that Defendants indirectly or

contributorily infringed U.S. Patent No. 6,387,407 ("the '407 patent") by importing, selling, or

offering to sell Defendants' BIONECT product.  *See* Dkt. 23 at ¶¶ 18, 25, 32, 38; *see also* 35

U.S.C. §§ 271(b), (c).  The '407 patent expired in 2006 because the relevant maintenance fees

were not timely paid to the Patent and Trademark Office ("PTO"), as required by statute.  In

April 2013, Plaintiff petitioned the PTO to reinstate the patent under the then-applicable

"unavoidable delay" standard for late payment of maintenance fees, and the PTO denied relief.

Subsequently, Plaintiff filed a second petition to reinstate the patent, this time under the recently

enacted Patent Law Treaties Implementation Act of 2012, P.L. 112-211, 126 Stat. 1527-1537

("PLTIA" or "Act"), which replaced the "unavoidable delay" standard with the less demanding

"unintentional delay" standard.  This time the PTO granted the petition and reinstated the patent.

Plaintiff then amended its complaint to allege infringement of the '407 patent.

Pending before the Court is Defendants' motion for judgment on the pleadings under

Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 55).  Defendants' motion presents a

single issue:  whether the effective date provision of the PLTIA—which provides that the Act

will have "no effect with respect to any patent that is the subject of litigation in an action

commenced before" December 18, 2013—forecloses Plaintiff's reliance on the reinstated '407

patent.  For the reasons given below, the Court concludes that it does not and, accordingly,

**DENIES** Defendants' motion.

## I. BACKGROUND

### A.      Statutory Background

Under the Patent Act, the PTO is required to charge periodic maintenance fees "for

maintaining in force all patents based on applications filed on or after December 12, 1980."  35

U.S.C. § 41(b)(1).  These maintenance fees are due 3.5 years, 7.5 years, and 11.5 years after the

grant of a patent.  *See id.* § 41(b)(1)(A)-(C).  "Unless payment of the applicable maintenance fee

. . . is received [by the PTO] on or before the date the fee is due or within a grace period of 6

months thereafter, the patent shall expire as of the end of such grace period."  35 U.S.C.

§ 41(b)(2).

At the end of the grace period, however, the patent is "only mostly dead."  *See* THE

PRINCESS BRIDE (Act III Communications 1987).  Congress has authorized the PTO Director to

accept delayed fees and to revive an expired patent under certain circumstances.  The patentee

must file a petition with the PTO and pay any delayed maintenance fees and applicable petition

fees.  *See* 35 U.S.C. § 41(a)(7) ("[t]he Director shall charge . . . fees" on the filing of a "petition

. . . for the delayed payment of the fee for maintaining a patent in force"); 37 C.F.R. § 1.378

(setting forth the requirements for a "petition to accept an unintentionally delayed payment of a

maintenance fee").  Once reinstated, "the patent shall be considered as not having expired at the

end of the grace period."  35 U.S.C. § 41(c)(1).  However, to "protect the rights of those who, in

reliance on the lapse, first began using the claimed invention or who first took steps to begin

using it during the lapse period," *Fonar Corp. v. GE Co.*, 107 F.3d 1543, 1554 (Fed. Cir. 1997),

Congress has provided that no reinstated patent "shall [ ] abridge or affect the right of any person

. . . who made, purchased, offered to sell, or used anything protected by the patent within the

United States, or imported anything protected by the patent into the United States after the 6-

month grace period but prior to the acceptance of a maintenance fee under this subsection."  35

U.S.C. § 41(c)(2); *see also Fonar Corp.*, 107 F.3d at 1554 (quoting the legislative history).

Prior to December 18, 2013, the PTO Director had discretion to accept delayed

maintenance fees for up to two years after the 6-month grace period ended, upon a showing that

the delay in paying the fees had been "unintentional."  *See* 35 U.S.C. § 41(c)(1) (2012); 37

C.F.R. § 1.378 (effective through Dec. 17, 2013); *see also* Manual of Patent Examining

Procedure § 2590 (2012).  After this two-year window, the PTO Director could accept delayed

fees only if the patentee satisfied a more stringent standard and demonstrated that the delay was

"unavoidable."  *See* 35 U.S.C. § 41(c)(1) (2012); *Burandt v. Dudas*, 528 F.3d 1329, 1333 (Fed.

Cir. 2008).

Congress changed this regime when it enacted the Patent Law Treaties Implementation

Act of 2012, P.L. 112-211, 126 Stat. 1527-1537.  The PLTIA implements the Patent Law Treaty,

which was ratified by the Senate on December 7, 2007, and harmonizes domestic patent

procedures with certain treaty requirements.  *See* S. Exec. Rep. 110-6, at 1 (2007).  Title II of the

PLTIA amends various statutory provisions relating to the filing and processing of patent applications and payment of fees.  As summarized in the final rule implementing these amendments, "[t]he changes in title II . . . are divided into three groups:  (1) The changes pertaining to a patent application filing date; (2) the changes pertaining to the revival of abandoned applications and acceptance of delayed maintenance fee payments; and (3) the changes pertaining to the restoration of the right of priority to a foreign application or the benefit of a provisional application."  Changes to Implement the Patent Law Treaty, 78 Fed. Reg. 62368, 62369 (Oct. 21, 2013).

The PLTIA makes it easier for patentees to reinstate expired patents by giving the PTO Director the discretion to accept "any" delayed maintenance fees upon a showing that the delay was "unintentional."  *See* P.L. 112-211 § 202(b)(1)(B) (amending 35 U.S.C. § 41(c)(1) to provide that "[t]he Director may accept the payment of any maintenance fee required by subsection (b) after the 6-month grace period if the delay is shown to the satisfaction of the Director to have been unintentional"); *see also* 37 C.F.R. § 1.378 (effective Dec. 18, 2013).  By replacing the "unavoidable" language in former section 41(c)(1), the PLTIA permits reinstatement of a patent that has been expired for even more than two years upon a showing of "unintentional delay."  Other provisions of the Act similarly authorized the Director to apply the "unintentional" standard to the revival of abandoned patent applications.  *See* P.L. 112-211 § 201(b) (authorizing the Director to "establish procedures . . . to revive an unintentionally abandoned application for patent"); *see also* 78 Fed. Reg. 62371.

The effective date of the PLTIA is December 18, 2013, one year after it was enacted.  *See* P.L. 112-211 § 203(a)(1).  Section 203(b), however, sets forth two "exceptions" to this effective date provision.  The first exception is not relevant here.  The second states:

> (2) Patents in Litigation.—The amendments made by this title [i.e., title II] shall have no effect with respect to *any patent that is the subject of litigation in an action commenced before the effective date* set forth in subsection (a)(1) [i.e., December 18, 2013].

P.L. 112-211 § 203(b)(2), *reprinted at* 35 U.S.C. § 27 note (2012) (emphasis added) (hereinafter

"litigation exception").

## B.    Factual and Procedural Background

Plaintiff commenced this litigation on November 25, 2012.  *See* Dkt. 1.  Although the

original complaint alleged infringement of two other patents, *see* Dkt. 1 ¶¶ 10-17, 22, 29, 29, 46,

on August 25, 2014, Plaintiff filed an amended complaint that dropped the original infringement

claims and replaced them with claims based on the '407 patent.  The amended complaint alleges

that "[w]ithin the six years immediately preceding the filing of this complaint, [Defendants have]

indirectly [or contributorily] infringed [the '407 patent]" by importing, selling, or offering to sell

Defendants' BIONECT gel product.  *See* Dkt. 23 ¶¶ 18, 25, 32, 38; *see also* 35 U.S.C. §§ 271(b),

(c).

As noted above, the '407 patent, which issued on May 14, 2002, *see* Dkt. 23-1, expired in

2006 for failure to timely pay maintenance fees, *see* PTO Notice of Patent Expiration (June 14,

2006).[1]  Plaintiff subsequently acquired the '407 patent.  In 2013, after commencing this suit, but

before asserting the '407 patent in the pending litigation, Plaintiff petitioned the PTO to reinstate

the patent on the grounds that the failure to pay maintenance fees was "unavoidable," as then-

required for patents that had expired more than two years earlier.  The PTO denied the petition,

concluding that Plaintiffs had failed to show the delay was "unavoidable."  *See* PTO Decision on

---

[1]  The file history of the '407 patent, including the cited administrative documents, may be viewed at http://portal.uspto.gov/pair/PublicPair.

Petition, at 5 (Feb. 10, 2014).  Shortly thereafter, Plaintiff filed a new petition seeking

reinstatement under the PLTIA's "unintentional" standard.  On June 20, 2014, the PTO granted

that petition and reinstated the '407 patent.  *See* PTO Decision on Petition, at 1 (June 20, 2014)

("The first, second and third maintenance fees are hereby accepted as having been

unintentionally delayed and the above identified patent is reinstated as of the mail date of this

decision.").  Plaintiff then filed the amended complaint alleging infringement of the '407 patent.

*See* Dkt. 23.

## II.  DISCUSSION

Defendants' motion presents a single issue of law:  whether the effective date provision

of the PLTIA precludes Plaintiff from invoking the reinstated '407 patent in this litigation.  *See*

Dkt. 55.  Defendants rely on the second "exception" to the PLTIA's effective date provision,

section 203(b)(2), which states that "[t]he amendments made by [title II of the PLTIA] shall have

no effect with respect to any patent that is the subject of litigation in an action commenced

before the effective date" of the statute, i.e., December 18, 2013.  P.L. 112-211 § 203(b)(2),

*reprinted at* 35 U.S.C. § 27 note.  It is undisputed that this litigation is "an action commenced

before the effective date" of the PLTIA.  Defendants argue that because the '407 patent is

presently "the subject of litigation" in such an action, section 203(b)(2) mandates that the PLTIA

amendments—including the relaxed standard for the Director to accept delayed maintenance

fees—"have no effect with respect to" the '407 patent.  Thus, Defendants argue, the lower

"unintentional" standard does not apply to the reinstatement of the '407 patent, at least for

purposes of this litigation.

Plaintiff argues, for its part, that the plain language of section 203(b)(2) applies only to a

patent that is "*already* the subject of litigation pending on the effective date," in which case "that

patent is not entitled to the benefit of the PLTIA *at least* during the pendency of that litigation." Dkt. 59 at 9 (emphases in original).  As support, Plaintiff points to the PLTIA's remedial purpose and the "structure of the statutory scheme."  *See* Dkt. 59 at 9-11.  Under Plaintiff's reading, although the '407 patent is presently "the subject of litigation" commenced before the PLTIA, section 203(b)(2) is inapplicable.

The parties ask the Court to resolve this dispute based solely on the text of the statute. *See* Dkt. 55 at 4; Dkt. 59 at 9-10.  Neither party identifies any pertinent legislative history, any case law analyzing section 203(b)(2) or any analogous statutory language, or any administrative interpretations of the provision.  Section 203(b)(2) states that the amendments in title II of the PLTIA "shall have no effect with respect to any patent that *is* the subject of litigation in an action commenced before the effective date."  (Emphasis added).  The question the Court must resolve is *when* this inquiry should be conducted.  Does the exception apply if the patent "is the subject of [pre-PLTIA] litigation" on the PLTIA's effective date; if the patent "is the subject of [pre-PLTIA] litigation" when the PTO applies the amended statutory provisions to the patent; or if the patent "is the subject of [pre-PLTIA] litigation" at *any* point in time?  Under Defendants' reading, section 203(b)(2) applies to any patent that is asserted in pre-PLTIA litigation at *any* point in time, including after the patent is reinstated pursuant to the PLTIA.  Plaintiff, in contrast, asks the Court to construe section 203(b)(2) to apply only if the patent is the subject of litigation on the PLTIA's effective date.  As explained below, the Court concludes that neither party is correct and that section 203(b)(2) is best read to apply where the patent subject to possible reinstatement is, at the time the PTO acts on a petition to reinstate the patent, the subject of

pending litigation commenced before December 18, 2013.[2]  Because the '407 patent was not asserted in this suit until after it was reinstated by the PTO, the exception in section 203(b)(2) is inapplicable.

Although the language of the effective date provision does not clearly define the scope of the pre-PLTIA litigation exception, the substantive provisions of the PLTIA provide substantial guidance.  Most importantly, rather than purporting directly to effect any change in the enforceability, validity or status of any patents, title II of the Act addresses the authority of the PTO Director and the consequences of her actions.  It thus authorizes the Director to "accept the payment of any maintenance fee required [by statute] after the 6-month grace period if the delay is shown to the satisfaction of the Director to have been unintentional," *see* P.L. 112-211 § 202(b)(1)(B), *codified at* 35 U.S.C. § 41(c)(1), it provides that "[t]he Director may require the payment of [a petition fee] as a condition of accepting [late] payment of any maintenance fee," *id.,* and it stipulates that, "[i]f the Director accepts payment of a [late] maintenance fee . . . the patent shall be considered as not having expired," *id.*  In this context, where the PLTIA is conferring new authority on the Director, the litigation exception to the effective date provision is most reasonably construed to define when the Director may exercise that new authority.

To be sure, the action of the Director in accepting a late maintenance fee is not merely an administrative matter, but may potentially affect the rights and interests of third parties, like Defendants here.  Most notably, the PLTIA re-enacted language in section 41(c)(1), providing that, once reinstated, an expired patent "shall be considered as not having expired at the end of the grace period."  35 U.S.C. § 41(c)(1).  But, many—if not most—PTO actions (e.g., issuance

---

[2]  Because the question is not presented, the Court does not decide which version of the law would apply where a patent became the subject of pre-PLTIA litigation between the filing of the petition and the Director's decision.

of a patent, cancellation, reinstatement) can alter a patent's status and affect third parties' rights. The pertinent point for present purposes is that the relevant provisions of the PLTIA define the Director's authority, even though the exercise of that authority may affect the interests of others.

Here, moreover, there is no dispute that the PLTIA was "effective" at the time the Director accepted Plaintiff's late-payment of the '407 patent's maintenance fees.  Putting aside for a moment the pre-PLTIA litigation exception, the Act took effect on December 18, 2013. Plaintiff filed its second petition to reinstate the patent on February 27, 2014, and the PTO granted the petition on June 20, 2014—well after the PLTIA had taken effect.  Moreover, at the time the PTO granted the petition, the '407 patent was not "the subject of litigation;" the complaint was not amended until after the patent was reinstated.  Accordingly, under any tenable construction of the effective date provision and the litigation exception, the Director was authorized to apply the "unintentional delay" standard at the time she granted the petition and reinstated the '407 patent.

As a result, for Defendants' theory to hold, the Court would need to conclude that either (1) the filing of the amended complaint acted to undo the Director's decision reinstating the '407 patent or (2) although properly reinstated, the '407 patent may not be asserted in any litigation commenced before December 18, 2013, the effective date of the PLTIA.  Neither theory is viable, for a number of common and separate reasons.

First, both theories ignore the fact that the PLTIA speaks most directly to the authority of the PTO Director.  Once that authority is exercised, the patent is reinstated.  The filing of a subsequent claim, even in a long-pending lawsuit, cannot deprive the PTO Director of any authority that was previously—and properly—exercised.  Had Congress intended such an unlikely result, it would almost certainly have spoken more directly and clearly to the issue.

Second, both versions of Defendants' theory ignore the fact that the PLTIA merely lessened the relevant standard for reinstating a patent that had expired for failure to pay the maintenance fee. Although in this case the PTO had previously concluded that the '407 patent was not subject to reinstatement under the more demanding "unavoidable delay" standard, in other cases the patentee would be entitled, at a minimum, to show that it could satisfy that standard instead of the "unintentional delay" standard.  Defendants' theory, however, leaves no room for this option.

These problems are highlighted by two Federal Circuit decisions.  In the first, *Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*, 543 F.3d 657 (Fed. Cir. 2008), the Court of Appeals for the Federal Circuit held that the allegedly improper revival of a patent application under the "unintentional delay" standard was not a cognizable defense in an infringement action, *see id.* at 662-63.  And, in the second, *Exela Pharma Sciences LLC v. Lee*, 781 F.3d 1349 (Fed. Cir. 2015) (per curiam), it held that the PTO's decision to revive an application under the "unintentional" standard is "not subject to third party challenge under the APA," *id.* at 1353.  Moreover, in the context of expired and reinstated patents, three district courts have held that "[t]he Patent Act does not give rise to an implied affirmative defense of erroneous reinstatement."  *Allied Tube & Conduit Corp. v. John Maneely Co.*, 125 F. Supp. 2d 987, 1001-02 (D. Ariz. 2000); *Laerdal Med. Corp. v. Ambu, Inc.*, 877 F. Supp. 255, 259-60 (D. Md. 1995); *Cal. Med. Prods., Inc., v. Tecnol Med. Prods., Inc.*, 921 F. Supp. 1219, 1256-57 (D. Del. 1995).  Neither party has addressed any of these cases—or, for that matter, any relevant patent law precedent.  However, the relief Defendants seek would effectively require an affirmative defense to be available, i.e., it would require the litigation exception to impose a condition on reinstatement that could be asserted in litigation, *after* the PTO has already reinstated a patent.  Had Congress intended to create an affirmative defense, it could have done

so expressly, as it has in other parts of the Patent Act.  *See, e.g.*, 35 U.S.C. § 282(b) (setting forth a list of matters that "shall be defenses in any action involving the validity or infringement of a patent," including "[a]ny other fact or act made a defense by" the Patent Act); *id.* § 282(c) (setting forth matters that "shall be a defense" to infringement "during the period of [a patent term] extension").  The fact that the PLTIA was enacted against a backdrop in which courts had declined to find even an *implied* affirmative defense based on improper reinstatement suggests that Congress did not intend the litigation exception to apply in circumstances in which it could be asserted only as an affirmative defense.

In addition to these problems, each of the two theories described above also suffers from further, separate flaws.  Most notably, the first theory—that an amendment to a pre-PLTIA complaint to assert a reinstated patent undoes the PTO's reinstatement of the patent—invites bizarre results and confusion.  Under this theory, the PLTIA would disconcertingly take effect on its effective date with respect to a given patent, then later cease to take effect if that patent is asserted in pre-PLTIA litigation, only to take effect again if the pre-PLTIA litigation is dropped so that the patent "is [no longer] the subject of [pre-PLTIA] litigation."  To make matters worse, this theory would seem to permit an adverse party to amend a pre-PLTIA declaratory judgment complaint or counterclaim to assert that the reinstated patent is either not infringed or invalid, thus rendering the patent "the subject of [pre-PLTIA] litigation," and thereby depriving the patentee of the benefit of the reinstatement.  It is difficult to imagine that in implementing a treaty designed to promote the "simplification of formal procedures" and to "reduce costs for patent . . . owners . . . seeking to . . . preserve their rights in inventions on a worldwide basis," S. Exec. Rep. 110-6, at 1 (2007), Congress would have intended to adopt such a convoluted set of rules.

Although the second version of Defendants' theory—that the revived patent is merely ineffective in the particular litigation "commenced before the effective date" of the PLTIA— mitigates these anomalies, it suffers from other difficulties.  Most significantly, the text of the litigation exception says that the PLTIA will "have no effect with respect to *any patent*" that falls within the exception.  *See* P.L. 112-211 § 203(b)(2) (emphasis added).  That is, it is the "patent" that is either reinstated or not.  The language, accordingly, does not invite an interpretation under which the patent is reinstated for other purposes, but cannot be asserted in a particular litigation. Rather, the PLTIA is either effective with respect to the relevant patent, or it is not.  Indeed, the very next paragraph of the statute demonstrates that Congress knows how to limit the applicability of a reinstated patent in particular circumstances.  Thus, 35 U.S.C. § 41(c)(2) provides that a reinstated patent "shall not abridge or affect the right of any person . . . who made, purchased, offered to sell, or used anything protected by the patent within the United States . . . after the 6-month grace period but prior to the acceptance of a maintenance fee under this subjection . . . ."  Had Congress intended to authorize the PTO Director to reinstate a patent, while precluding the patentee from asserting the reinstated patent in any pre-PLTIA litigation, it could have adopted language similar to section 41(c)(2).  The fact that Congress did not enact such language is difficult to square with the contention that the pre-PLTIA litigation exception narrowly precludes the assertion of a reinstated patent in a case that was pending before the Act's effective date.

Plaintiffs' interpretation, which simply asks whether section 203(b)(2) applied on the PLTIA's effective date, fares better than Defendants' interpretation, but it also fails to explain the statutory text.  The statute creates two separate requirements with temporal dimensions— first, that at some point the patent "*is* the subject of litigation," and second, that such litigation

was "commenced before the effective date."  P.L. 112-211 § 203(b)(2) (emphasis added).  If, as Plaintiffs urge, the exception applied only to patents that were "the subject of litigation" on the effective date, these separate temporal requirements would become redundant:  every patent that was the subject of litigation when the amendments took effect would necessarily have been the subject of litigation "commenced before the effective date."  In contrast, Congress's limitation of the litigation exception to patents asserted in litigation "commenced before the effective date" can be given meaning by adopting the middle course set forth above: the reinstatement provisions amended by the PLTIA are applicable to decisions made by the PTO Director after December 18, 2013, unless at the time the PTO Director makes her determination the patent "is the subject of litigation" in an action that was commenced before December 18, 2013.

Plaintiff's interpretation also suffers from one of the flaws in Defendants' position:  both parties' interpretations fail to recognize that the PLTIA is principally directed at the authority of the PTO Director.  That aspect of the statute strongly supports the conclusion that the effective date inquiry should, similarly, focus on the timeframe when the Director acts.  Plaintiff, however, would apply the law *before* the Director acts, while Defendants would apply the law *after* the Director has already acted.  The Court, in contrast, concludes that the proper focus is on whether the Director has authority to act at the time she either grants or denies the petition to reinstate the patent.

That conclusion, however, requires that the Court address one final question, premised on the general presumption "that statutes do not contain surplusage."  *Arlington Central School Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 299 n.1 (2006).  That question is whether, as construed by the Court, the litigation exception to the effective date provision would have any meaningful application.  Although not foreclosed as a matter of logic, it seems unlikely that the litigation

13

exception, as construed by the Court, would have any meaningful application to the reinstatement of patents that have expired for failure to make timely maintenance payments. First, it is improbable that Congress was concerned with pending litigation in which the parties had asserted claims for infringement of *expired* patents.  And, even if an asserted patent might have accidentally been allowed to expire during litigation for failure to timely pay a maintenance fee, the PLTIA is still unlikely to have made a difference, as the omission would need to have gone unnoticed for *two years* beyond the six-month grace period before the pre-PLTIA "unavoidable delay" standard would have been triggered.  Second, although it is possible that the litigation exception might apply to a pre-PLTIA administrative suit brought against the PTO by a patentee dissatisfied with the Director's denial of reinstatement, that possibility also seems to make little sense of Congress's concern about the effect of the PLTIA on pending litigation, because a dissatisfied patentee could simply file a new petition with the PTO after December 18, 2013, in order to take advantage of the less demanding "unintentional delay" standard.

Even assuming the litigation exception has little meaningful application to reinstated patents, however, the Court still concludes that it is not surplusage because other provisions in the Act might have affected patents in pending litigation.  In particular, the pre-PLTIA "unavoidable delay" standard also applied where the patentee sought to revive an abandoned patent *application*.  *See Ray v. Lehman*, 55 F.3d 606, 609 (Fed. Cir. 1995); *see also* 35 U.S.C. § 133 (specifying when an "application shall be regarded as abandoned by the parties thereto"). Under the PLTIA, the revival of an abandoned application, like the acceptance of delayed maintenance fees, is governed by the "unintentional delay" standard.  *See* P.L. 112-211 §§ 202(b)(5), (9) (amending 35 U.S.C. § 133 and § 371(d) to delete language relating to "unavoidable" delay); *id.* § 201(b) (authorizing the Director to "establish procedures . . . to

revive an unintentionally abandoned application for patent"); *see also* 78 Fed. Reg. 62371.  The

PLTIA also authorized the Director to restore priority rights based on a prior international

application (or provisional application) where the filing of a subsequent U.S. application or

priority claim had been unintentionally delayed.  *See* P.L. 112-211 § 201(c)(1) (amending 35

U.S.C. §§ 119(a), (e) and § 365(b)); *see also* 78 Fed. Reg. 62372.  Thus, the changes made in the

PLTIA could have affected a pending suit in which the patentee relied on a predecessor

application to secure an earlier priority date and avoid potentially invalidating prior art.  *Cf.*

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 491 F. Supp. 2d 916, 924-29 (N.D. Cal.

2008) (granting summary judgment to an alleged infringer where an abandoned application was

revived on a showing of "unintentional," rather than "unavoidable," delay); *rev'd*, 543 F.3d 657

(Fed. Cir. 2008).

This scenario is not an empty hypothetical.  Patentees do at times file petitions during

litigation, upon realizing that an abandoned application has left a gap in the asserted patent's

priority chain.  *E.g.*, *Avanir Pharms., Inc. v. Actavis S. Atlantic LLC*, 987 F. Supp. 2d 504, 517

(D. Del. 2013) (holding that plaintiffs' petition to revive a predecessor application was

inoperative due to a procedural deficiency).  And at the time the PLTIA was enacted, litigants

had challenged the PTO's authority to revive abandoned applications under the "unintentional"

standard.  *See* 78 Fed. Reg. 62382 ("The patent laws formerly provided for revival of an

unintentionally abandoned application only in the patent fee provisions . . . [which] raised

questions concerning the [agency's] authority to revive an unintentionally abandoned application

(without a showing of unavoidable delay) in certain situations."); *Aristocrat Techs.*, 543 F.3d at

660.

It can be presumed that when Congress enacted the PLTIA, it knew that the revival of abandoned applications was an important and recurring theme in patent litigation. It makes sense that the litigation exception was enacted, at least in part, to prevent the PTO from taking administrative actions that could affect the validity of an asserted patent midway through infringement litigation, by enabling the patentee to secure an earlier priority date based on a revived application. This inference is bolstered by the similarity between the litigation exception and a similar exception in a provision enacted in the American Inventors Protection Act of 1999. *See* P.L. 106-113, Div. B, § 1000(a)(9), 113 Stat. 1536 (enacting into law § 4801 of Subtitle H of Title IV of S. 1948 (113 Stat. 1501A-589), as introduced on Nov. 17, 1999). Like the PLTIA, section 4801 amended statutory provisions relating to priority and prior applications, *see id.*; *see also* 35 U.S.C. § 119(e), but did not address maintenance fees, expiration, or reinstatement. Its "effective date" provision, section 4801(d), contains language strikingly similar to the pre-PLTIA litigation exception: "[t]he amendments made by subsections (b) and (c) *shall have no effect with respect to any patent which is the subject of litigation in an action commenced before [the effective date]*." *Id.* (emphasis added), *reprinted at* 35 U.S.C. § 119 note. Section 4801's legislative history is no more informative than the PLTIA's with respect to the meaning of this language. But the similarity between the two "effective date" exceptions supports the conclusion that Congress did not intend section 203(b)(2) merely to constitute a special limitation on the enforceability of reinstated patents.

Accordingly, the Court rejects Defendants' contention that section 203(b)(2) of the PLTIA effectively voids, in whole or in part, the PTO's reinstatement of the '407 patent.

### III.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. 55) is **DENIED**.

It is **SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge

Date:  June 10, 2015