**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GLYCOBIOSCIENCES, INC.,

      *Plaintiff*,

      v.

INNOCUTIS HOLDINGS, LLC, *et al.*,

      *Defendants*.

Civil Action No. 12-1901 (RDM)

## MEMORANDUM OPINION AND ORDER

Presently before the Court is the motion of Defendant Fidia Farmaceutici S.P.A. ("Fidia")
to dismiss portions of Plaintiff Glycobiosciences's ("Glyco") amended complaint. *See* Dkt. 85.
Fidia moves to dismiss Glyco's claims for misappropriation of trade secrets in violation of D.C.
Code § 36-401 *et seq.* (Count IV); unlawful trade practices in violation of the District of
Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.* (Count V);
common law unfair competition (Count VI); and unjust enrichment (Count VII). According to
Fidia, each of these counts must be dismissed in light of forum-selection clauses contained in
two agreements between the parties. In the alternative, Fidia argues that Count V should be
dismissed under Rule 12(b)(6) because Glyco is not in a consumer-merchant relationship with
Fidia.

As explained below, the Court **GRANTS** in part and **DENIES** in part Fidia's motion. It
concludes that Counts IV and VII, as well as a portion of Count VI, are covered by mandatory
forum-selection clauses, and, accordingly, it dismisses those counts (or portions thereof) on the
ground of *forum non conveniens*. In addition, although the Court concludes that the forum-

selection clauses do not cover Count V, it dismisses that count for failure to state a claim under the D.C. Consumer Protection Procedures Act.

## I.      BACKGROUND

The Court has previously discussed other aspects of the background of this litigation in its opinions regarding claim construction and Defendants' motion for judgment on the pleadings.[1]   The Court does not repeat that history here, but rather focuses on those facts relevant to Fidia's pending motion to dismiss.  For purposes of that motion, the following allegations are taken as true and are construed in the light most favorable to the non-moving party.  *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Fidia, an Italian company with a principal place of business in Abano Terme, Italy, manufactures a product called Bionect Gel, purportedly under U.S. Patent No. 5,925,626 ('626 patent).  Dkt. 77 ¶¶ 11, 21.  Glyco, a Canadian company with a principal place of business in Georgetown, Canada, is the owner of U.S. Patent No. 6,387,407 ('407 patent), which claims an "Ionic Polymer Matrix ('IPM')" delivery system.  *Id.* ¶¶ 1–3.  Glyco's IPM Wound Gel product allegedly uses this "proprietary and patented [IPM] delivery system."  *Id.* ¶¶ 2–3.

In June 2003, Fidia sent Glyco's predecessor, L.A.M. Pharmaceutical, a letter asserting that IPM Wound Gel was covered by Fidia's '626 patent, which L.A.M. disputed.  Dkt. 77-3 (Am. Compl. Ex. C); Dkt. 77 ¶ 34.  Fidia's '626 patent expired in December 2003.  Dkt. 77 ¶ 35.  Fidia then challenged a European patent that corresponded to L.A.M.'s '407 patent, but did not succeed at the trial-court level.  *Id.* ¶ 36.  Fidia threatened to appeal that adverse decision and simultaneously sought to purchase L.A.M.'s "'407 patent, the European patent EP 0859597, all

---

[1] *See Glycobiosciences, Inc. v. Innocutis Holdings*, LLC, No. 12-1901, 2015 WL 7574749 (D.D.C. Nov. 25, 2015); *Glycobiosciences, Inc. v. Innocutis Holdings, LLC*, No. 12-1901, 2015 WL 3609343 (D.D.C. June 10, 2015).

of the rights under L.A.M.'s FDA 510(k) No. K020325 relating to IPM Wound Gel, and all technical information relating to the IPM Wound Gel." *Id.* ¶ 37.

In order to facilitate negotiations over these assets, Fidia and L.A.M. entered into an information-sharing agreement in May 2006, under which Fidia agreed not to disclose or to use otherwise secret information about IPM Wound Gel that it obtained solely for the purpose of evaluating the proposed transaction. Dkt. 84-1 at 3. The 2006 Agreement included a clause stating that "[t]his Agreement shall be governed in all respects by the laws of Italy and in case of dispute the competent forum shall be that of Padua, Italy." *Id.* at 4. Fidia subsequently decided not to purchase L.A.M.'s assets. Dkt. 77 ¶ 50. Glyco alleges that notwithstanding the 2006 Agreement, Fidia used the information about IPM Wound Gel that it had obtained to improve Bionect. *Id.* ¶ 47. Glyco also alleges on information and belief that Fidia, in fact, never intended to purchase L.A.M.'s assets when it entered the 2006 Agreement. *Id.* ¶ 51.

In late 2009 or early 2010, Fidia and Glyco again entered into negotiations, this time regarding the possibility of Fidia manufacturing IPM Wound Gel for Glyco. *Id.* ¶ 52. The parties entered into a new information-sharing agreement in February 2010, under which Fidia again agreed not to disclose or to use otherwise secret information about IPM Wound Gel except to evaluate the proposed business relationship.[2] Dkt. 84-2 at 2. The 2010 Agreement included a clause stating that "[t]his Agreement shall be construed under and governed by the laws of U.K. In case of disputes the competent court shall be that of London, U.K." *Id.* at 3. Fidia ultimately decided not to manufacture IPM Wound Gel. Dkt. 77 ¶ 56. According to Glyco, "on

---

[2] Although the Agreement's first paragraph states that it "is entered into this 24th day of February, 2010," Dkt. 84-2 at 2, the date printed below Fidia's CEO's signature is "24 February 2009," *id.* at 4. At this stage of the proceeding, the Court accepts as true Glyco's allegation that the agreement was entered in 2010. Dkt. 77 ¶ 53. The discrepancy is, in any event, irrelevant to the Court's analysis.

information and belief, [Fidia] did not enter into the . . . 2010 [A]greement in good faith but rather to surreptitiously and deceitfully obtain updated technical information" about IPM Wound Gel. *Id.* ¶¶ 54, 57.

On September 2, 2015, Glyco filed an amended complaint against Fidia (and others), alleging two counts of indirect infringement of the '407 patent (Counts I and II), false patent marking with respect to Bionect and the '626 patent (Count III), misappropriation of trade secrets (Count IV), unlawful trade practices (Count V), common law unfair competition (Count VI), and unjust enrichment (Count VII). Dkt. 23. Presently before the Court is Fidia's motion to dismiss Counts IV–VII of the amended complaint, arguing that Counts IV–VII should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) and, alternatively, that Count V should be dismissed under Rule 12(b)(6).[3] Dkts. 85, 86. The Court heard oral argument on the motion on May 2, 2016, *see* Dkt. 130, and the following day, it invited Glyco to file a surreply brief to address an issue raised for the first time in Fidia's reply brief, *see* May 3, 2016 Minute Order. Glyco filed that surreply on May 16, 2016. Dkt. 136. Fidia's motion, accordingly, is now ripe for decision.

## II.    ANALYSIS

### A.    Forum-selection Clauses

Fidia contends that under the forum-selection clauses contained in the 2006 and 2010 Agreements, Counts IV–VII must be dismissed. Fidia initially denominated its motion as a Rule 12(b)(3) motion to dismiss for improper venue. *See* Dkt. 86 at 5–8. As it subsequently realized,

---

[3] The false patent marking claim is the subject of a partial motion for summary judgment by Fidia, which has not yet been fully briefed. *See* Dkt. 96. The indirect infringement claims are stayed pending reexamination of '407 patent by the U.S. Patent and Trademark Office. *See* Dkt. 131.

however, in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, the Supreme Court held that "the appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of *forum non conveniens*," and not a Rule 12(b)(3) motion to dismiss. 134 S. Ct. 568, 580 (2013). Fidia thus asks that the Court treat its motion as a *forum non conveniens* motion. The Court agrees that it is appropriate to do so.

As an initial matter, the Court concludes that Glyco will not be prejudiced by treating Fidia's motion in this manner. Although Fidia did not invoke the doctrine of *forum non conveniens* until it filed its reply brief, the substance of Fidia's defense did not change in material respects, and Glyco did not object at the subsequent oral argument. Moreover, to avoid any possible prejudice, the Court *sua sponte* granted Glyco leave to file a surreply addressing the *forum non conveniens* issue. *See* May 3, 2016 Minute Order. In response, Glyco did not dispute the inapplicability of Rule 12(b)(3), but, instead, argued that 28 U.S.C. § 1404(a) governs Fidia's motion; that under that statute, a case may be transferred, but not dismissed; and that because Fidia seeks dismissal and not transfer, its motion must be denied. Dkt. 136 at 6–7. That argument, however, is without merit. As the Supreme Court explained in *Atlantic Marine*, "[f]or . . . cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* 'has continuing application in federal courts.'" 134 S. Ct. at 580. Because there is no basis to believe that Glyco has been prejudiced by Fidia's late-invocation of the *forum non conveniens* doctrine, and because the Supreme Court has clearly opined that

neither Rule 12(b)(3) nor § 1404(a) applies in the present circumstances, the Court will treat

Fidia's motion to dismiss as a *forum non conveniens* motion.[4] Dkt. 93 at 4.

"In the typical case not involving a forum-selection clause, a district court considering a

. . . *forum non conveniens* motion . . . [would] evaluate both the convenience of the parties and

various public-interest considerations." *Atlantic Marine*, 134 S. Ct. at 581. "The calculus

changes, however, when the parties' contract contains a valid forum-selection clause." *Id.* If it

does, the parties' bargain—that is, their agreement regarding the proper forum for resolving

disputes—should be "given controlling weight in all but the most exceptional cases." *Id.*

(quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

Thus, where the parties have entered into a valid forum selection clause, "the plaintiff's choice of

forum merits no weight," and "a court evaluating a defendant's [*forum non conveniens* motion]

based on a forum-selection clause should not consider arguments about the parties' *private*

interests." *Id.* at 581–82 (emphasis added). The court "may consider arguments about" the

*public* interest, but that "factor will rarely defeat [the] motion." *Id.* at 582. As a consequence,

contractually valid "forum-selection clauses should control except in unusual circumstances."

*Id.*

---

[4] Prior to Fidia's request that the Court construe its motion as asserting *forum non conveniens*, Glyco argued that Fidia waived the defense of improper venue under Rule 12(b)(3) by failing to include it in its answer. Dkt. 90 at 5. The waiver provisions of Rule 12(h), do not, however, apply to a *forum non conveniens* motion. 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3829 (4th ed.) ("Although the authority is not extensive," "[u]nlike a motion to dismiss for improper venue under Rule 12(b)(3)," a motion to dismiss for *forum non conveniens* "is not a 'defense' that must be raised by pre-answer motion or responsive pleading."). In any event, even if the Rule 12(h) waiver rules applied, Fidia complied with Rule 12(h)(1)(B)(ii) by filing an amended answer that asserted improper venue as a defense to Counts IV, V, VI, and counsel for Glyco conceded as much at oral argument. *See* Dkt. 87 ¶ 213.

6

Here, Glyco does not attempt to meet the heavy burden of "showing that public-interest factors overwhelmingly disfavor" dismissal, trumping the parties' agreed-upon forum. *Id.* at 583. Nor "does [it] point to factors typically relied on by litigants seeking to avoid enforcement of forum-selection clauses—for instance, that the clause is the product of fraud or that its enforcement would contravene a strong public policy of the forum in which suit is brought . . . ." *Marra v. Papandreou*, 216 F.3d 1119, 1124 (D.C. Cir. 2000). Instead, it raises two arguments that relate to the text of the 2006 and 2010 Agreements: First, it contends that the forum-selection clauses in the Agreements do not apply to the dispute at hand. Second, it argues that, in any event, the clauses do not designate an *exclusive* forum, but merely a "competent" one. *See* Dkt. 90 at 5–10 (emphasis added); *see also Atlantic Marine*, 134 S. Ct. at 581 n.5 (explaining that the Court's *forum non conveniens* interest-balancing "analysis presupposes a contractually valid forum-selection clause"); 14D Charles Alan Wright et al., *Federal Practice & Procedure* § 3803.1 (4th ed.) ("The existence of a forum selection clause raises a series of potentially litigable questions[.]").[5] The Court addresses each argument in turn. Because neither party distinguishes between the clauses in the 2006 and 2010 Agreements, and because it is unclear on the present record which is applicable to Glyco's claims, the Court treats the two together.

    1.    *Applicability of forum-selection clauses*

Glyco first contends that the forum-selection clauses apply "only if the cause of action arises under a breach of contract" and that it does not assert such a claim here. Dkt. 90 at 6. The scope of a forum-selection clause is a matter of contract interpretation. "[I]n determining

---

[5] Glyco's only assertion that the public interest requires denial of Fidia's motion is a conclusory statement that "for the same reasons"—that is, that Fidia's interpretation of the clauses as covering any and all possible litigation between the parties is too broad and would unduly burden Glyco—the "public interest works in favor of Plaintif[f]." Dkt. 136 at 5–6.

whether a claim [is covered by a forum-selection clause], one must 'examine the substance of [the] claims shorn of their labels,' and 'focus on factual allegations rather than on the causes of action asserted.' . . . Hence, the mere fact that a plaintiff has pled his claim as a tort . . . does not determine whether the claim" is covered. *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 122 (D.D.C. 2008) (citations omitted). To the contrary, forum-selection clauses are often found applicable to non-contract claims. *See, e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588, 597 (enforcing forum-selection clause with respect to negligence claim); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 4, 20 (1972) (same); *Marra*, 216 F.3d at 1124 n.4 (enforcing forum-selection clause with respect to expropriation claim); *see also* Wright et al., *supra*, § 3803.1 (collecting cases).

"The starting point, of course, is the language of the clause itself." Wright et al., *supra*, § 3803.1. The forum-selection clauses at issue here state, respectively, that "[t]his agreement shall be governed in all respects by the laws of Italy and in case of dispute the competent forum shall be that of Padua, Italy" and that "[t]his agreement shall be construed under and governed by the laws of the U.K.[] In case of disputes the competent court shall be that of London, U.K." Dkt. 84-1 at 4 (2006 Agreement); Dkt. 84-2 at 3 (2010 Agreement). Although these clauses do not use precisely the same "any dispute arising from the agreement" or "originating from the agreement" language that courts have frequently construed in similar circumstances, *see, e.g.*, *Cheney*, 583 F. Supp. 2d at 122, their import is the same. Indeed, that is precisely how Glyco characterizes them, *see* Dkt. 90 at 7 ("[B]oth clauses refer specifically to any disputes arising from the two Agreements."), and the Court accepts this characterization for purposes of resolving Fidia's motion. The Court, accordingly, looks to "three guiding principles . . . [that] are instructive in determining whether claims 'arise' from a contract":

> A claim may "arise under" a contract (1) where the claim "'ultimately depend[s] on the existence of a contractual relationship between the parties'"; (2) "'resolution of the claims relates to interpretation of the contract'"; or (3) "'contract-related tort claims involv[e] the same operative facts as a parallel claim for breach of contract.'" This is consistent with the Second Circuit's observation . . . that whether one or another claim "arises out of" or "originates" from a contract depends on whether there is a "causal connection" between the claim and the contract based on rights, duties, or injury flowing from the contract.

*Cheney*, 583 F. Supp. 2d at 122 (citations omitted) (synthesizing cases from First, Second, Third, Eighth, and Ninth Circuits); *see also Marra*, 216 F.3d at 1124 n.4 (interpreting forum-selection clause applicable to "[a]ny dispute or disagreement . . . arising from" a license as covering an "expropriation claim [that] is wholly derivative of the . . . alleged breach of the . . . license").

Applying this test to Glyco's amended complaint, Count IV, which alleges misappropriation of trade secrets in violation of the D.C. Uniform Trade Secrets Act ("UTSA"), D.C. Code §§ 36-401 *et seq.*, arises from the 2006 and/or 2010 Agreements. As relevant here, a claim of misappropriation under the UTSA requires a showing that a trade secret was acquired through "improper means" or was disclosed or used "without express or implied consent by a person who" acquired the information by "improper means" or who knew that the information was "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." [6] Glyco alleges that it provided Fidia with access to its trade secrets only after Fidia

---

[6] D.C. Code § 36-401(2) provides that "[m]isappropriation" means:

    (A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    (B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

        (i)  Used improper means to acquire knowledge of the trade secret; or

executed the Agreements, committing not to disclose or to use those trade secrets except as agreed. Dkt. 77 ¶¶ 145–72. In particular, it alleges that Fidia and L.A.M. entered into the first non-disclosure agreement in May 2006, *id.* ¶ 155, and that L.A.M. disclosed "technical data to Fidia related to [its] IPM Wound Gel product" as a result of that agreement, *id.* ¶ 156. Likewise, Glyco alleges that, after it acquired L.A.M., it disclosed "updated technical data to Fidia" only after—and "[b]y virtue of" the fact that—the parties entered the second non-disclosure agreement. *Id.* ¶¶ 158, 160. And, although Glyco contends that Fidia used threats of litigation, pretext and misrepresentations to convince it (and L.A.M.) to share these trade secrets, *id.* ¶¶ 164–66, neither the complaint nor Glyco's opposition brief offers any basis to disentangle those allegations from its allegations that it (and L.A.M.) provided Fidia with the secrets because Fidia promised to use the information solely for the business purposes outlined in the non-disclosure agreements, *see* Dkts. 90, 84-1, 84-2.

Resolution of Glyco's misappropriation claim is thus both intertwined with and premised on the same operative facts that would underlie a claim for breach of the Agreements. The misappropriation claim relies on the negotiations leading up to entry of the Agreements, Fidia's

---

(ii)  At the time of disclosure or use, knew or had reason to know that the trade secret was:
   (I) Derived from or through a person who had utilized improper means to acquire it;
   (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
   (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii)  Before a material change in his or her position, knew or had reason to know that the information was a trade secret and knowledge of the trade secret had been acquired by accident or mistake.

asserted lack of good faith in those negotiations, and the representations and obligations included in the Agreements. Glyco cannot escape its promise to litigate in the agreed-upon fora by merely reformulating or adding to what is, at base, a claim that Fidia failed to abide by its contractual obligation to use Glyco's trade secrets only for purposes of the business dealings between the parties. The claim is, accordingly, covered by the forum-selection clauses.

Count VII, which alleges unjust enrichment, arises from the Agreements for the same reasons. That count simply adds that "Fidia has been unjustly enriched by the manner and use of Glyco's technical data in connection with Bionect Gel." Dkt. 77 ¶ 194. As explained above, whether that "manner and use" was permissible turns at least in substantial part on Fidia's obligations under the Agreements. Count VI, which alleges common law unfair competition, similarly originates in the Agreements to the extent that Glyco alleges that the 2006 and 2010 Agreements were not entered in good faith, but, rather, were a pretext to obtain confidential information for improper purposes. *See id.* ¶ 185 (alleging that Fidia "misrepresent[ed] its intentions to Glyco in its business dealings and contractual negotiations"). And, although Glyco contends that Fidia's misconduct preceded the Agreements "by at least three years, beginning with the improper threats of litigation from counsel in 2003," Dkt. 136 at 3, the mere fact that certain relevant conduct occurred before the entry of the Agreements does not make Glyco's claim that Fidia improperly obtained and used its trade secrets any less dependent on the operative confidential disclosure Agreements.

The Court concludes, however, that Count V and the remainder of the allegations in Count VI are outside the scope of the forum-selection clauses. In Count V, an unlawful trade practices claim, Glyco alleges that "Fidia misrepresented [to consumers and prospective licensees] that Bionect Gel products are patent protected, are registered with the FDA, and that

Fidia's Bionect Gel has characteristics [or formulas] that it does not have," and that Fidia "disparaged the goods and services and business of Glyco." Dkt. 77 ¶¶ 175–79. Those allegations are distinct from Glyco's contentions that Fidia neither entered the Agreements in good faith nor abided by the limits the Agreements imposed on its use of Glyco's trade secrets. Count VI similarly includes allegations that Fidia made misrepresentations to consumers and prospective licensees. *Id.* ¶¶ 185, 187. These claims of misrepresentations and disparaging statements made to third parties are independent of the 2006 and 2010 Agreements and Fidia's obligations to Glyco thereunder and therefore are not covered by the forum-selection clauses.

2.     *Whether the clauses are mandatory*

Next, Glyco argues that "neither clause is written as exclusive[;] the clauses simply designate a particular forum as 'competent' and do not exclude other for[a] as equally competent." Dkt. 90 at 7. The Court, accordingly, must "determine whether [the clauses are] mandatory" or "permissive." Wright et al., *supra*, § 3803.1. "Mandatory forum selection clauses contain clear language that litigation will proceed exclusively in the designated forum" and must be enforced. *Id.* In contrast, "[p]ermissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere." *Id.*

The Court concludes that the forum-selection clauses at issue here are mandatory. They provide that "in case of dispute *the* competent forum *shall* be that of Padua," Dkt. 84-1 at 4 (2006 Agreement) (emphases added), and that "in case of disputes *the* competent court *shall* be that of London," Dkt. 84-2 at 3 (2010 Agreement) (emphases added). Glyco is correct that use

of the term "shall" is not always dispositive of whether a forum-selection clause is mandatory.[7]
But the clauses here include other language evincing the parties' intent to preselect an exclusive
forum. Most significantly, the clauses do not merely designate "*a* competent" or "*one*
competent" forum; they designate "*the* competent" forum. The use of the definite article "the"
connotes specificity—that the parties intended to select those particular fora and not others. This
conclusion, moreover, is reinforced by the (admittedly less conclusive) fact that the Agreements
also specify, respectively, that they would be "governed in all respects by," Dkt. 84-1 at 4 (2006
Agreement), or "construed under and governed by," Dkt. 84-2 at 3 (2010 Agreement), foreign
law—at least suggesting a nexus to those foreign jurisdictions and an intent to litigate disputes
arising from the Agreements outside the United States. *Cf. Atl. Tele-Network, Inc.*, 251 F. Supp.
2d at 136.

   Glyco's contention that to be mandatory, a forum-selection clause "should" contain
magic works like "'exclusively' or 'solely' or 'only,'" Dkt. 90 at 8, is belied by the Supreme
Court's conclusion that a forum-selection clause stating that "[a]ny dispute arising must be
treated before the London Court of Justice" was "clearly mandatory," *M/S Bremen v. Zapata Off-
Shore Co.*, 407 U.S. at 2, 20, as well as by the D.C. Circuit's holding that a clause stating that
"[a]ny dispute . . . shall be settled by the Greek courts" "clear[ly] . . . requires [plaintiff] to file
her suit in Greece." *Marra*, 216 F.3d at 1120–21, 1124; *see also Wall St. Aubrey Golf, LLC v.
Aubrey*, 189 F. App'x 82, 85–86 (3d Cir. 2006) ("Despite the provision's failure to use words
like 'exclusive' or 'sole' with respect to venue, it would require an interpretive sleight of hand to

---

[7] *Compare Carmen Group. Inc. v. Xavier Univ. of La.*, 41 F. Supp. 3d 8, 12 (D.D.C. 2014), *and
Atl. Tele-Network, Inc. v. Inter-Am. Dev.*, 251 F. Supp. 2d 126, 135–36 (D.D.C. 2003); *with
Cynergy Sys., Inc. v. Bright Sch., Inc.*, 656 F. Supp. 2d 150, 152 (D.D.C. 2009), *and Byrd v.
Admiral Moving & Storage, Inc.*, 355 F. Supp. 2d 234, 238–39 (D.D.C. 2005).

produce the conclusion that the provision is ambiguous."). And, even if the Court were to conclude that the language at issue in *M/S Bremen* and *Marra* was more emphatic than that at issue here, there is little doubt that the clauses in the 2006 and 2010 Agreements are more akin to the clauses in those and other mandatory cases, than to the permissive, "jurisdiction conferring" clauses cited by Glyco. *Cf., e.g.*, *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) ("[E]ither party *shall be free to* pursue its rights at law or equity in *a* court of competent jurisdiction in Fairfax County." (second emphasis added)); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) (distinguishing mandatory clause stating that "any legal proceedings that may arise out of [the agreement] are to be brought in England" from permissive clause stating that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts").

For the foregoing reasons, the Court **GRANTS** Fidia's *forum non conveniens* motion as to Counts IV and VII, as well as a portion of Count VI, and **DENIES** that motion in all other respects.

## B.    Rule 12(b)(6)

Having rejected Fidia's argument that Count V must be dismissed under the doctrine of *forum non conveniens*, the Court must consider Fidia's argument for dismissal of that count under Rule 12(b)(6). Count V alleges a violation of the D.C. Consumer Protection Procedures Act ("CPPA"), which "is a comprehensive statute designed to provide procedures and remedies for a broad spectrum of practices which injure consumers." *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 722–23 (D.C. 2003) (quoting *Atwater v. District of Columbia Dep't of Consumer & Reg. Affairs*, 566 A.2d 462, 465 (D.C. 1989)). Under the CPPA, it is unlawful for a "person," among other things, to "misrepresent . . . a material fact which has a tendency to

mislead" or to "fail to state a material fact if such failure tends to mislead." *Id.* § 28-3904. This prohibition applies "whether or not any consumer is in fact misled, deceived or damaged thereby." *Id.*

The Court agrees with Fidia that Glyco's claim fails as a matter of law because the CPPA requires a consumer-merchant relationship between the parties. Dkt. 86 at 9. Notwithstanding the sweeping language of § 28-3904, the D.C. Court of Appeals has held that the CPPA "was designed to police trade practices arising only out of consumer-merchant relationships." *Howard v. Riggs Nat. Bank*, 432 A.2d 701, 709 (D.C. 1981). Multiple decisions in this District, moreover, have held that a plaintiff fails to state a claim under the CPPA if the challenged practice did not occur in the context of a consumer-merchant relationship between the parties, *see Howard*, 432 A.2d at 709 (holding plaintiff could not state a claim against bank from which she sought a construction loan based on bank employee's alleged misrepresentations about quality of contractor); *Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 27 (D.D.C. 1998) (rejecting claim against NASA premised on its rejection of plaintiff's funding proposal); *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 728 F. Supp. 24, 34 (D.D.C. 1990) (rejecting claim by owner of apartment complex premised on alleged discrimination by elevator company against certain owners of its elevators), *aff'd in part and vacated in part*, 929 F.2d 714 (D.C. Cir. 1991); *Mazanderan v. Indep. Taxi Owners' Ass'n, Inc.*, 700 F. Supp. 588, 591 (D.D.C. 1988) (rejecting claim by taxicab operator challenging, "in his role as an independent businessman," professional organization's requirement that members purchase gasoline from it); *Indep. Commc'ns Network, Inc. v. MCI Telecomms. Corp.*, 657 F. Supp. 785, 788 (D.D.C. 1987) (rejecting claim by telecommunications company based on another telecommunications company's allegedly disparaging remarks).

Here, Glyco alleges that Fidia violated the CPPA by mispresenting "that Bionect Gel products are patent protected, are registered with the FDA, and . . . [have] characteristics [or formulas] that it does not have," including that "Fidia's Bionect Gel product, use, or method of manufacturing would lead to results similar to the results of Glyco's IPM Wound Gel product, use, or method of manufacturing." Dkt. 77 ¶¶ 175, 178. It also alleges that Fidia made disparaging remarks about Glyco's products. *Id.* ¶ 179. Glyco is not, however, a consumer of Bionect, either directly or indirectly—it is the owner of a competing product—and Count V does not include any allegation that Fidia made misrepresentations to Glyco with respect to any transaction between the parties for a consumer good or service. At oral argument, moreover, counsel for Glyco conceded that its allegations in Count V are duplicative of its allegations that Fidia engaged in common law unfair competition. Because Glyco's unlawful trade practice allegations pertain solely to misrepresentations made to third parties—consumers of Bionect and "prospective licensees," *id.* ¶ 177—it fails to state a claim under the CPPA. In short, "the case at bar involves a relationship between two entities which are both on the supply side of a consumer-merchant interaction; it does not involve a consumer-merchant relationship itself." *Indep. Commc'ns Network, Inc.*, 657 F. Supp. at 788.

Glyco responds that the CPPA provides a cause of action to an "individual," and that under cases like *Citizens United v. FEC*, 588 U.S. 310 (2010), and *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014), this term encompasses corporations. Dkt. 90 at 11–12. This argument is unavailing for two reasons. First, although the CPPA does not expressly define "individual," it is clear from the CPPA's definition of "person" that organizational entities like corporations constitute "person[s]," but are not "individual[s]." *See* D.C. Code § 28-3901(a)(1) (defining "person" to mean "an individual, firm, corporation, partnership, cooperative,

association, or any other organization, legal entity, or group of individuals however organized");

*see also id*. § 28-3901(b)(14) (defining "nonprofit organization" to mean "a person" who "[i]s

not an individual"). Second, the cause of action for an "individual" applies to challenges brought

by "an individual" "on behalf of *that individual*, or on behalf of both *the individual* and the

general public" regarding a "trade practice [that] involves consumer goods or services that *the*

*individual purchased or received* in order to test or evaluate qualities pertaining to use for

personal, household, or family purposes." *Id*. § 28-3901(k)(1)(B) (emphases added). Glyco does

not allege that, even if it were an "individual" within the meaning of the CPPA, it is suing in its

capacity as a purchaser or recipient of the goods at issue. To the contrary, Glyco's allegations

focus on the injury that it has allegedly suffered in its capacity as a competitor of Fidia. Claims

of that type fall beyond the scope of the CPPA.

For the foregoing reasons, the Court, accordingly, **GRANTS** Fidia's motion to dismiss

Count V for failure to state a claim under the CPPA.

### III.    CONCLUSION

It is hereby **ORDERED** that Fidia's motion to dismiss, Dkt, 85, is **GRANTED** in part

and **DENIED** in part**.** Counts IV, V, and VII, as well as the portion of Count VI specified above,

are **DISMISSED.**

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: May 24, 2016